George J. HOGAN and Marian M. Hogan, Plaintiff-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 74–1379.

United States Court of Appeals, Sixth Circuit.

March 18, 1975.

Patrick J. Regan, Regan, Sargent, Klenda, McGannon, Paup & Glickman, James J. McGannon, Wichita, Kan., for appellant.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Chief, Appellate Section, Ernest J. Brown, Jonathan S. Cohen, Donald H. Olson, Tax Div., Dept.

of Justice, Washington, D. C., for appellee.

Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from dismissal of a suit for refund of federal taxes paid for the tax year 1968 by a federal Civil Service employee.[1] He seeks return of taxes he was required to pay upon the percentage of his salary (6.5%) which was deducted in the year in question and credited in his name to the Civil Service Retirement and Disability Fund, 5 U.S.C. § 8334(a) and § 8348 (1970).

The statute provides that the federal employee "is deemed to consent and agree to these deductions from basic pay." 5 U.S.C. § 8334(b) (1970). It also provides for an equal amount to be contributed by the government to the Civil Service Retirement Fund "from the appropriation or fund used to pay the employee." 5 U.S.C. § 8334(a) (1970). These matching funds are not, however, included in the employee's gross income for purposes of income tax.

This case was heard in the District Court on a stipulation of facts which is a part of our appellate record which we incorporate by reference, quoting herein only directly pertinent paragraphs as follows:

9. Under Section 8334(a) of the Civil Service Retirement Act[2] as it was in force during the year in suit, 6½ percent of the basic pay of an employee covered by the Act was required to be withheld from his payroll check and deposited with the Treasury of the United States to the credit of the "Civil Service Retirement and Disability Fund" (hereinafter Fund); and an equal amount was deposited in the Treasury of the United States to the credit of the Fund by the Government agency which employed him. Said amounts withheld from the employee's basic pay and deposited to the credit of the Fund were entered on the individual employee's retirement record pursuant to Section 8334(f) of the Civil Service Retirement Act. Said amounts deposited by the Government agency employing the individual employees were not credited to any individual employee's retirement record. Pursuant to Section 8334(b) of the Civil Service Retirement Act, each employee is deemed to consent and agree to the above-described deductions from basic pay. Said deductions shall hereafter be referred to in this stipulation as the employee's "Section 8334 deduction." During 1968 approximately 2,650,000 persons had such Section 8334 deductions under the Act.

10. For executive branch employees, the percentage rates of such Section 8334 deductions under the Civil Service Retirement Act from its inception and with its various amendments are as follows:

| Date of Service | Percentage Rates for Deductions from Basic Pay |
| --- | --- |
| Before August, 1920 | 0 |
| From August, 1920, to June, 1926 | 2½ |
| From July, 1926, to June, 1942 | 3½ |
| From July, 1942, to June, 1948 | 5 |
| From July, 1948, to September, 1956 | 6 |
| From October, 1956, to December, 1969 | 6½ |
| From January, 1970, to Present | 7 |

11. The unrefunded amounts entered on an individual employee's retirement record constitute his "lump-sum credit" which includes the employee's Section 8334 deductions as well as sums deposited covering prior service and certain interest, all as described in Section 8331(8) of the Civil Service Retirement Act.

1. Marian M. Hogan is a joint plaintiff only because as the taxpayer's wife she signed the joint tax return.

2. The Civil Service Retirement Act was originally passed in 1920. Act of May 22, 1920, Pub.L. No. 66-215, 41 Stat. 618. The Act is codified as subchapter III of chapter 83 of Title 5 of the United States Code. 5 U.S.C. §§ 8331–8348 (1970). Thus the references to the Act in this stipulation incorporate the section denomination used in the Code.

The employee has no access to his lump-sum credit except upon conditions set forth in the Civil Service Retirement Act which in general are retirement, death, disability or termination of service.

12. Pursuant to Section 8333 of the Civil Service Retirement Act there are two general requirements which a classified employee must meet before he or his survivors are eligible for an annuity:

1. He must have completed at least five years of civilian service with the Government;

2. He must have been subject to the provisions of the Civil Service Retirement Act for at least one year out of the last two years preceeding separating from service unless separation is due to death or disability.

13. Pursuant to Section 8339 of the Civil Service Retirement Act the amount of the annuity payable upon retirement is directly related to the earnings and years of service of the individual employee. The formula is generally based on a percentage of the highest rate of service, the percentage increasing with the total number of years of service up to a maximum of eighty percent.

14. Most employees covered by the Civil Service Retirement Act are required to retire when they become 70 years of age if they have completed 15 years of service. An employee covered by the Act is entitled to an annuity after becoming 55 years of age and completing at least 30 years of service; after becoming 60 years of age and completing at least 20 years of service; and after becoming 62 years of age and completing five years of service. Total disability payments are payable after five years of service.

15. The Civil Service Retirement Act provides for additional benefits such as survivor-annuity benefits to widows or widowers and dependent children of deceased employees. If all annuity rights under the Civil Service Retirement Act which are based on the service of a deceased employee or members terminate before the total annuity paid equals the lump-sum credit, the difference is paid to the survivors or next of kin of the employee or member.

16. Regardless of length of service, an employee who departs from Government service for any reason, may withdraw his retirement fund lump-sum credit if his departure occurs and his refund claim is filed with the Civil Service Commission at least thirty-one (31) days before the commencing date of any annuity for which he may be eligible. Receipt of the lump-sum credit voids all annuity rights unless reemployed under the retirement system and a new retirement right is acquired. An employee with more than five years of service has, on departure, the option of leaving his lump-sum credit in the retirement fund and drawing regular deferred annuity benefits starting at age sixty-two.

\*    \*    \*    \*    \*    \*

21. The original Civil Service Retirement Act was enacted on May 22, 1920. The Section 8334 deductions were first deducted from the Federal Employees' pay on August 1, 1920. As of June 30, 1969, the Fund balance in the Civil Service Retirement Fund was $20.6 billion. On that date the unfunded liability was $57.7 billion.

\*    \*    \*    \*    \*    \*

23. As on June 1969, the annual input into the Fund from employees' Section 8334 deductions and equal contributions by Government agencies was 13 percent of payroll, whereas benefits and administrative expenses under the Act cost an amount equal to 13.86 percent of payroll. It was estimated that at the rate by 1975 the cost of benefits and administrative expenses under the Act would exceed the income of the Fund from all sources and by 1987 the Fund balance would be completely exhausted.

\*    \*    \*    \*    \*    \*

27. In 1969 the Administration and Congress recognized that the situation described in paragraph 23 existed. Legislation was proposed to stabilize and control the unfunded liability. In 1969

Public Law 91–93 [3] was enacted which contained financing provision in a "three-step" method as follows:

(1) The employees' Section 8334 deductions and the Government agencies' employer contributions were raised to 7 percent each, for a total of 14 percent of payroll, to cover the costs of current benefits and administrative costs which were 13.86 percent of payroll at that time;

(2) All future legislation creating retirement liability by benefit or pay increases or extension of coverage would be deemed to authorize appropriations to the Fund to finance the unfunded liability attributable thereto on a thirty-year amortization schedule;

(3) Permanent indefinite appropriations were provided in gradually increasing amounts over ten years so that they would equal, in 1980, 100 percent of the amount equivalent to what would be the interest on the unfunded liability each year, computed at the interest rate used in computing the unfunded liability; as well as the estimated costs of annuities for that year attributable to credit allowed for military service.

Under these financing provisions, it is estimated that the unfunded liability will level off at approximately $76 billion in 1980 with the exception of additional liability attributable to the cost-of-living increases pursuant to Section 8340 of the Act.

Appellant taxpayer contended below, and contends here, that the 1968 retirement deductions should be treated as an employer contribution and, hence, under recent income tax rulings, not taxable to him until received. He argues that the funds deducted are not includable in gross income since the Civil Service Employees Retirement Fund is neither a "qualified" plan nor "an independent trust" within the meaning of Sections 401 and 402 of the Internal Revenue Code of 1954. Finally, (without distinguishing between equal protection and

due process) he contends the tax as assessed against and paid by him is discriminatory as compared to the treatment accorded privately employed or self-employed taxpayers and violates his right to due process of law.

Appellant, as we read his argument, emphasizes four facts: 1) that the 1968 deductions for the retirement fund were mandatory, 2) that the Civil Service Retirement Fund is not funded so as to be able presently to pay off its accrued liability, 3) that the fund is not independent of his employer and, hence, not an independent trust, and 4) that an increasing number of privately employed or self-employed persons are allowed to make payments (or have payments made) to pension funds which payments are not includable in their gross income for tax purposes.

The questions posed are not new ones and they have been answered repeatedly by denial of the taxpayers' claims. Miller v. Commissioner of Internal Revenue, 144 F.2d 287 (4th Cir. 1944); Megibow v. Commissioner, 218 F.2d 687 (3d Cir. 1955); Lawrence J. Cohen, 63 T.C. No. 23 (Nov. 26, 1974). See also Eugene G. Feistman, 63 T.C. No. 13 (Nov. 12, 1974).

In our instant appeal the District Judge relied strongly upon the Miller and Megibow cases in holding that the Civil Service Retirement Fund deductions from appellant's pay check were part of his gross income for purposes of income taxation.

We have reviewed this record and the old and the new cases cited above, and the more recent legislation and regulations which are cited to us by appellant in his discrimination argument. We believe that the Miller, Megibow and Cohen cases just cited clearly represent accurate interpretation of the intention of Congress in relation to the legislation in question.

1) Appellant's salary is and was fixed by statute. It included the sum which was deducted in 1968 for purposes of the Civil Service Retirement Plan. The deduction was made because he was eligi-

3. Act of Oct. 20, 1969, Pub.L. No. 91–93, 83 Stat. 137, amending 5 U.S.C. § 8348 (1966).

ble for retirement benefits. If he had not been eligible for the retirement plan, his compensation clearly would have been the full amount. In the *Cohen* case the Tax Court said:

> As is clear from the . . . *Megibow* case, we considered the same argument with respect to the amount withheld from the taxpayer's salary being a contribution to a qualified pension plan by the employer that petitioner has made in the instant case. As respondent points out, the salaries of Federal employees in the various grades provided by Civil Service are set by statute, and as the stipulated facts show this statutory salary is the starting point in computing the amount of the paycheck to be issued to each employee. If for some reason such as being a temporary employee or a non-electing Member of Congress, a person is not covered by the Retirement Act but does have a salary fixed by statute, his gross pay is computed on the basis of the statutory salary for his classification or grade even though there is no section 8334 deduction made for an amount withheld under the Retirement Act. In our view petitioners have shown no basis for their position that the amount withheld under the Civil Service Retirement Act from an employee's basic pay is not a part of the employee's compensation. We therefore conclude that there is no basis for changing the holding we made in *Isaiah Megibow, supra,* that the withheld amount is an employee's payment into the Civil Service Retirement Fund and not an employer's payment. *Lawrence J. Cohen, supra* at 25–26 of the slip opinion. (Footnote omitted.)

■ We agree with the Tax Court (and with the District Court below) that the disputed 1968 deductions were employee contributions and not employer contributions for income tax purposes.

■ 2) Appellant's 1968 contributions did represent valuable rights which were vested in him at the time. For example, they, plus the equal or greater sums pledged by the government, served to purchase specified retirement benefits available to him on retirement as well as disability benefits in the event of disabling accident or illness. 5 U.S.C. §§ 8336–8338 (1970). They were also returnable to him, usually with interest, in the event of his leaving the service before eligibility for retirement. 5 U.S.C. §§ 8331(8) and 8342 (1970). They were also payable, usually with interest, to his heirs if at death the lump sum credit had not previously been paid to him in benefits. 5 U.S.C. § 8342(d–f) (1970). And these rights, if for any reason they were denied him, appellant could enforce through suit against the United States under the Tucker Act, as amended, 28 U.S.C. § 1346 (1970); Dismuke v. United States, 297 U.S. 167, 170, 56 S.Ct. 400, 80 L.Ed. 561 (1936).

■ Present vesting of a right, even if its enjoyment is postponed to the happening of a future event, is an important aspect of gross income for income tax purposes. Renton K. Brodie, 1 T.C. 275 (1942). *See also* United States v. Basye, 410 U.S. 441, 452, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973).

3) Congress has intentionally required the employee contribution which is disputed here with the full knowledge that income tax liability resulted. In the legislative history of the Employee Retirement Income Security Act of 1974,[4] we find this pertinent discussion:

> *Designated contributions.*—Under present law, contributions which are designated as employee contributions are generally treated as employee contributions for purposes of the Federal tax law. For example, this is the case with respect to employee contributions under the Federal Civil Service plan. Your committee's bill contains a provision[5] to clarify this rule for the future. This provision provides that amounts that are contributed to a

---

**4.** Act of Sept. 2, 1974, Pub.L. No. 93-406, 88 Stat. 829.

**5.** *See* § 1015 of 1974 Act, *supra.*

qualified plan are not to be treated as an employer contribution if they are designated as employee contributions.

This provision gives effect to the source of the contributions, as designated in the plan. For example, if the appropriate committees of the Congress were to report legislation regarding employee contributions under the Federal Civil Service plan so that the present employee's contributions would become employer contributions under the Federal Civil Service plan (and that legislation were to be enacted), then those contributions would constitute employer contributions to the plan, which would be excludable from the employee's income when made. The same rule would apply to State and local governmental plans which now designate contributions as employee contributions, if the appropriate governmental bodies change the provisions of their plans. H.R.Rep.No. 93–807, 93rd Cong., 2nd Sess., reported in 8A U.S.Code Cong. & Adm.News 288, 428 (1974).

4) Since we have held that the disputed amounts of gross income are includable for income tax purposes because they are employee contributions rather than employer contributions, we do not need to determine whether or not the Civil Service Employee Retirement Plan is a "qualified" plan under Section 401 or an Independent Trust under Section 402 of the Internal Revenue Code of 1954.

If there were need for findings on either issue, however, we observe that Congress has specifically designated the Civil Service Employees Retirement Fund as an Independent Trust.

In 31 U.S.C. § 725s (1970), Congress declared:

725s. Trust funds.—(a) The funds appearing on the books of the Government and listed in subsections (b) and (c) of this section shall be classified on the books of the Treasury as trust funds. All moneys accruing to these funds are appropriated and shall be disbursed in compliance with the terms of the trust. . . .

(6) Civil Service Retirement and Disability Fund (0t843).

5) We do not believe this record presents any significant constitutional issue arising out of discriminatory treatment of federal civil service employees as compared to private employees or the privately self-employed. There are many distinctions between pension plans for employees in the private sector and this pension plan for government employees to warrant separate classification of the latter to be found to be reasonable. One of the primary distinctions, of course, is the relative insecurity of many private pension plans compared to the statutory commitment of the United States Government to the payment of the Civil Service Retirement Plan benefits. *See, e. g.,* H.R.Rep.No.93–807, *supra* at 297.

We have also considered the fact that the statutory language we quoted at the outset of this opinion appears in form to create an irrebuttable presumption that each employee has consented to the deductions—a presumption which (at least in the case of an employee who intended to stay on the government job for less than five years) might well not be true. Despite the form of language employed, however, we believe that Congress' intention was to make employee participation in the Civil Service Retirement Plan a mandatory condition of employment. Such a condition is by no means uncommon in private pension schemes, *see, e. g.,* Rev.Rul. 70–658, 1970–2 Cum.Bul. 87, and does not serve to deprive government employees of any constitutional right.

We conclude that Congress has determined that the federal employee contribution to the Civil Service Pension Fund is presently includable in gross income, that Congress has so specified and has the right to do so, and that any relief must be by Congressional enactment.

The judgment of the District Court is affirmed.